# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT WOJCIK, derivatively on behalf of OMEGA HEALTHCARE INVESTORS, INC.<br><br>        Plaintiff,<br><br>v.<br><br>OMEGA HEALTHCARE INVESTORS, INC., C. TAYLOR PICKETT, ROBERT O. STEPHENSON, DANIEL J. BOOTH, CRAIG M. BERNFIELD, NORMAN R. BOBINS, CRAIG R. CALLEN, BARBARA B. HILL, HAROLD J. KLOOSTERMAN, BERNARD J. KORMAN, EDWARD LOWENTHAL, BEN W. PERKS, STEPHEN D. PLAVIN, KAPILA K. ANAND, and BURKE W. WHITMAN,<br><br>        Defendants. | Case No.: 1:20-cv-03491-JKB |

## STIPULATION OF SETTLEMENT

This stipulation of settlement ("Stipulation"), dated February 22, 2024, is made and entered into by and among the Settling Parties, by and through their respective counsel of record in this derivative action ("Derivative Action").[1] This Stipulation is intended by the Settling Parties to fully, finally, and forever, resolve, discharge, and settle the Released Claims, subject to the terms and conditions set forth herein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Proceedings in this Action

On December 12, 2020, plaintiff Robert Wojcik ("Plaintiff") filed this verified shareholder

---

[1]     Terms not otherwise defined shall have the meaning set forth in Section V.1 of this Stipulation.

derivative complaint on behalf of nominal defendant Omega Healthcare Investors, Inc. ("Omega" or the "Company") for alleged violations of Section 14(a) of the Exchange Act, for contribution under Sections 10(b) and 21D of the Exchange Act, as well as claims for breach of fiduciary duty, unjust enrichment, abuse of control, gross mismanagement, and waste of corporate assets, relating to lack of diversity, discrimination, race, gender, and social justice, as well as relating to statements concerning the financial condition of one of Omega's tenants as alleged in a securities class action that is described below.

Pursuant to the parties' agreement, the Court so ordered a stipulation to stay the Derivative Action on December 21, 2020, which stay was subsequently continued thereafter.

On October 4, 2022, the Court entered a Stipulation and Protective Order Regarding Confidential Information, and on October 10, 2022, Defendants produced documents to Plaintiff subject to the terms of the protective order.

### B. Proceedings in the Securities Class Action

On November 16, 2017, Dror Gronich filed a class action for violations of the federal securities laws on behalf of a class of all Persons who purchased or otherwise acquired the securities of Omega between February 8, 2017, and October 31, 2017, in the United States District Court for the Southern District of New York ("New York Federal Court"), captioned *Gronich v. Omega Healthcare Investors, Inc., et al.,* 1:17-cv-08983 ("*Gronich*"). On November 17, 2017, Steve Klein filed a substantially similar, related class action complaint for violations of the federal securities laws, captioned *Klein v. Omega Healthcare Investors, Inc., et al.,* 1:17-cv-09024 ("*Klein*"). On March 27, 2018, pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4(a)(3), *et seq.,* the *Gronich* and *Klein* cases were consolidated under the caption *In Re Omega Healthcare Investors, Inc. Securities Litigation,* 1:17-cv-08983 (the "Securities Class Action"). The Securities Class Action alleged violations of §§ 10(b) and 20(a) of the Securities

Exchange Act of 1934, 15 U.S.C. §§78j(b) and 78t(a) primarily relating to statements concerning the financial condition of one of Omega's tenants.  On April 25, 2023, the New York Federal Court approved a settlement resolving all claims in the Securities Class Action.

### C.  Proceedings in Related Derivative Actions

On August 22, 2018, Stourbridge Investments LLC filed a stockholder derivative action on behalf of nominal defendant Omega for alleged violations of §14(a) of the Securities Exchange Act of 1934, breaches of fiduciary duties, abuse of control, and gross mismanagement, primarily relating to matters alleged in the Securities Class Action, in the New York Federal Court, captioned *Stourbridge Investments, LLC v. Callen et al.*, Case No. 1:18-cv-07638 (the "Stourbridge Action"). The Stourbridge Action was stayed on October 10, 2018.  Pursuant to the parties' request by joint letter, dated January 30, 2024, the case will remain stayed until March 1, 2024.  On January 30, 2019, Philip Swan filed a substantially similar stockholder derivative action on behalf of nominal defendant Omega for alleged breaches of fiduciary duty, waste of corporate assets, and unjust enrichment in the Baltimore City Circuit Court, Maryland ("Baltimore Court") captioned *Swan v, Pickett et al.*, Case No. 24-C-19-000573 ("Swan Action," and together with the Stourbridge Action, the "Other Derivative Actions"). On February 21, 2019, Tom Bradley filed a substantially similar stockholder derivative complaint in the Baltimore Court captioned *Bradley, et al. v. Callen et al.*, Case No. 24-C-19-000972 that was consolidated into the Swan Action.  Pursuant to the parties' agreement, the Swan Action was stayed pursuant to court order on October 11, 2019, which stay was subsequently continued on January 6, 2022, and again on October 17, 2023.

### D.  Settlement Efforts

In December 2020, the Settling Parties and the parties in the Securities Class Action and Other Derivative Actions engaged the services of neutral mediator David Murphy, Esq. of Phillips ADR ("Mediator"), to assist in settlement discussions.

On December 31, 2020, the Settling Parties exchanged confidential mediation briefs. Plaintiff submitted a settlement demand with his mediation brief that included a corporate governance reforms proposal and a damages analysis.

On January 13, 2021, the Settling Parties, and the parties in the Securities Class Action and Other Derivative Actions, participated in an all-day mediation session via Zoom with the Mediator. The mediation did not result in an agreement, but the parties remained in contact with the Mediator, conducting informal and formal negotiations over the 19 months that followed.

On September 30, 2022, the Settling Parties engaged in a second all-day mediation session in person in New York, New York with the Mediator. The parties in the Securities Class Action and Other Derivative Actions attended this mediation session in person or via Zoom. That session ultimately resulted in a resolution of the Securities Class Action, but no agreement to resolve the Derivative Action or Other Derivative Actions was reached.

The Settling Parties continued to engage in informal and formal arms-length negotiations directly and through the Mediator. Throughout the year 2023, the Settling Parties exchanged numerous proposals and counterproposals to resolve the Derivative Action, including verbal discussions and comprehensive written proposals. The Settling Parties ultimately agreed in principle on September 21, 2023, on the material terms, including the corporate governance reforms relating to diversity, discrimination, race, gender, or social justice adopted by Omega ("Corporate Governance Reforms"), to resolve the Derivative Action, which were subsequently memorialized in this Stipulation.[2]

Following the Settling Parties' agreement in principle on the material terms of a settlement,

---

[2]    This Stipulation does not resolve the Other Derivative Actions. The parties to the Other Derivative Actions have agreed to enter into a separate stipulation of settlement.

on November 14, 2023, the Settling Parties engaged in a third all-day mediation session in person in New York, New York with the Mediator to negotiate the attorneys' fees and expenses that would be payable by Omega's insurers in recognition of the substantial benefits achieved through settlement. The parties in the Other Derivative Actions attended this mediation session in person or via Zoom. The mediation did not result in an agreement between the Settling Parties on attorneys' fees and expenses, but the Settling Parties remained in contact with the Mediator. Ultimately, on November 17, 2023, the Settling Parties accepted the Mediator's double-blind proposal for Omega's insurers to pay $850,000 in attorneys' fees and expenses to Plaintiff's Counsel, subject to Court approval.

## II.    PLAINTIFF'S CLAIMS AND THE BENEFITS OF SETTLEMENT

Plaintiff believes that the Derivative Action has substantial merit, and Plaintiff's entry into this Stipulation and Settlement is not intended to be and shall not be construed as an admission or concession concerning the relative strength or merit of the claims alleged in the Derivative Action. However, Plaintiff and Plaintiff's Counsel recognize and acknowledge the significant risk, expense, and length of continued proceedings necessary to prosecute the Derivative Action against the Individual Defendants through trial and possible appeals.  Plaintiff's Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex cases such as the Derivative Action, as well as the difficulties and delays inherent in such litigation.  Plaintiff's Counsel are also mindful of the inherent problems of pleading the futility of a pre-suit litigation demand in derivative litigation, and the possible defenses to the claims alleged in the Derivative Action.

Plaintiff's Counsel have conducted extensive investigation and analysis, including, *inter alia*: (i) reviewing and analyzing Omega press releases, public statements, and filings with the U.S. Securities and Exchange Commission; (ii) reviewing and analyzing securities analysts'

reports and advisories and media reports about the Company; (iii) reviewing and analyzing the pleadings and orders in the Securities Class Action; (iv) researching the applicable law with respect to the claims alleged and the potential defenses thereto; (v) preparing and filing the complaint in the Derivative Action; (vi) researching and evaluating factual and legal issues relevant to the claims; (vii) reviewed thousands of pages of confidential internal corporate documents produced by Defendants; (viii) engaging in settlement negotiations with Defendants' counsel regarding the specific facts, and perceived strengths and weaknesses of the Derivative Action, and other issues in an effort to facilitate negotiations; (ix) researching the Company's corporate governance structure in connection with settlement efforts; (x) preparing a comprehensive settlement demand and modified demands over the course of the Settling Parties' settlement negotiations; (xi) negotiating and drafting a memorandum of understanding setting forth the agreement in principle among the Settling Parties; (xii) participating in the three full-day mediation sessions; and (xiii) negotiating and drafting this comprehensive Stipulation.

Based on Plaintiff's Counsel's thorough review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, Plaintiff's Counsel believe that the Settlement set forth in this Stipulation is fair, reasonable, and adequate, and confers substantial benefits upon Omega.  Based upon Plaintiff's Counsel's evaluation, Plaintiff has determined that the Settlement is in the best interests of Omega and have agreed to settle the Derivative Action upon the terms and subject to the conditions set forth herein.

## III.    DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have denied and continue to deny each and all of the claims and contentions alleged by Plaintiff in the Derivative Action, and the Individual Defendants have expressly denied and continue to deny all allegations of wrongdoing or liability against them arising out of any conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Derivative

Action. Nonetheless, Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Derivative Action. Defendants have determined that is it in the best interests of Omega for the Derivative Action to be settled in the manner and upon the terms and conditions set in this Stipulation.

Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment, nor any document or exhibit referred or attached to this Stipulation, may be construed as, or may be used as evidence of the validity of any of the Released Claims or an admission by or against the Individual Defendants of any fault, wrongdoing, or concession of liability whatsoever.

## IV.    BOARD APPROVAL OF THE SETTLEMENT

Omega, acting through its Board, reviewed the allegations and the terms of the Settlement, and in a good faith exercise of business judgment approved by a resolution that the Settlement, as set forth in this Stipulation, and separately the Corporate Governance Reforms, as set forth in Exhibit A hereto, provide substantial benefits to Omega, are in the best interests of Omega, and are fair, reasonable, and adequate.

## V.    TERMS OF THE STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the undersigned counsel for the Settling Parties herein, in consideration of the benefits flowing to the Settling Parties from the Settlement, and subject to the approval of the Court, that the claims asserted in the Derivative Action and the Released Claims shall be finally and fully compromised, settled, and released, with full preclusive effect as to all Settling Parties, upon and subject to the terms and conditions of this Stipulation, as set below:

### 1.    Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1    "Applicable Law" means all federal, state and local laws, rules, regulations and

policies applicable to Omega.

1.2    "Bankruptcy Proceedings" means any proceedings by or on behalf of Omega, whether voluntary or involuntary, that are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action, as described in paragraph V.7.1 of this Stipulation.

1.3    "Board" means the board of directors of Omega.

1.4    "Court" means the United States District Court for the District of Maryland, which is presiding over the Derivative Action.

1.5    "Company" means Omega Healthcare Investors, Inc.

1.6    "Corporate Governance Reforms" means the corporate governance reforms relating to diversity, discrimination, race, gender, or social justice, as set forth in Exhibit A attached hereto.

1.7    "Current Shareholders" means any Person who owns Omega common stock as of the date of the execution of this Stipulation and continues to hold their Omega common stock as of the date of Settlement Hearing, excluding the Individual Defendants, the officers and directors of Omega, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Individual Defendants have or had a controlling interest.

1.8    "Defendants" means the Individual Defendants and Omega.

1.9    "Defendants' Counsel" means Bryan Cave Leighton Paisner LLP, Pessin Katz Law, P.A., and any other law firm or lawyer that appeared or will appear for Defendants in the Derivative Action.

1.10    "Defendants' Released Claims" means all claims and causes of action (including

known claims and Unknown Claims, whether for damages, injunctive relief, interest, attorneys' fees, expert or consulting fees, or any other costs, expenses, or liabilities whatsoever) that could be asserted in any forum by any of the Defendants' Releasing Persons against Defendants' Released Persons, arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Derivative Action, *provided, however,* that Defendants' Released Claims shall not include claims to enforce the terms of the Stipulation and/or the Judgment.

1.11    "Defendants' Released Persons" means Plaintiff, Plaintiff's Counsel, and each and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates, beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of Plaintiff, and each of their respective predecessors, successors, and assigns.

1.12    "Defendants' Releasing Persons" means the Defendants and their heirs, successors, representatives, assigns, beneficiaries, and any person or entity that could assert any of the Defendants' Released Claims.

1.13    "Derivative Action" means *Wojcik v. Omega Healthcare Investors, Inc., et al.*, Case No. 1:20-cv-03491 (D. Md.).

1.14    "Diversity Claims" means all Plaintiff's Released Claims that concern or otherwise

relate (directly or indirectly) to diversity, discrimination, race, gender, or social justice. For the avoidance of doubt, Diversity Claims shall not include claims or causes of action asserted in the Other Derivative Actions as of the date of the execution of this Stipulation.

1.15     "Effective Date" means the date by which the events and conditions specified in paragraph V.6.1 of this Stipulation have been met and have occurred.

1.16     "Fee and Expense Amount" means the amount described in paragraph V.4.1 of this Stipulation.

1.17     "Final" means the date upon which the last of the following shall occur with respect to the Judgment: (i) the expiration of the time to file a motion to alter or amend the Judgment under Federal Rule of Civil Procedure 59(e) has passed without any such motion having been filed; (ii) the expiration of the time in which to appeal the Judgment has passed without any appeal having been taken, which date shall be deemed to be thirty (30) days following the entry of the Judgment, unless the date to take such an appeal shall have been extended, or unless the 30th day falls on a weekend or a legal holiday, in which case the date for purposes of this Stipulation shall be deemed to be the next business day after such 30th day; and (iii) if such motion to alter or amend is filed or if an appeal is taken, immediately after the determination of that motion or appeal so that it is no longer subject to any further judicial review or appeal whatsoever, whether by reason of affirmance by a court of last resort, lapse of time, voluntary dismissal of the appeal or otherwise, and in such a manner as to permit the consummation of the settlement in accordance with the terms and conditions of this Stipulation. For purposes of this Stipulation, an "appeal" shall include any petition for a writ of certiorari or other writ that may be filed in connection with approval or disapproval of this Settlement. Notwithstanding anything to the contrary, no proceeding or order, or any appeal or petition for

a writ of certiorari pertaining solely to the application for attorneys' fees, costs, or expenses, shall in any way delay or preclude the Judgment from becoming Final.

1.18    "Individual Defendants" means the defendants in the Derivative Action other than Omega, namely C. Taylor Pickett, Robert O. Stephenson, Daniel J. Booth, Craig M. Bernfield, Norman R. Bobins, Craig R. Callen, Barbara B. Hill, Harold J. Kloosterman, Bernard J. Korman, Edward Lowenthal, Ben W. Perks, Stephen D. Plavin, Kapila K. Anand, and Burke W. Whitman.

1.19    "Judgment" means the Order and Final Judgment to be rendered by the Court in the Derivative Action, substantially in the form attached hereto as Exhibit E.

1.20    "Mediator" means David Murphy, Esq., in his capacity as mediator in connection with the Derivative Action.

1.21    "Non-Diversity Claims" means all of Plaintiff's Released Claims other than Diversity Claims.

1.22    "Notice" means the Notice of Proposed Settlement and of Settlement Hearing, substantially in the form attached hereto as Exhibit C.

1.23    "Omega" means Omega Healthcare Investors, Inc.

1.24    "Other Derivative Actions" means each of the Stourbridge Action and the Swan Action.

1.25    "Person" means an individual, corporation, limited liability corporation, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government, or any political subdivision or agency thereof and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.26    "Plaintiff" means the plaintiff in the Derivative Action, namely Robert Wojcik.

1.27    "Plaintiff's Counsel" means The Brown Law Firm, P.C., Wagner PLLC, Mark Cotton, and any other law firm or lawyer that appeared or will appear for Plaintiff in the Derivative Action.

1.28    "Plaintiff's Released Claims" means all claims and causes of action (including known claims and Unknown Claims, whether for damages, injunctive relief, interest, attorneys' fees, expert or consulting fees, or any other costs, expenses, or liabilities whatsoever) against any of the Plaintiff's Released Persons that *(a)* were asserted or could have been asserted in the Derivative Action; *(b)* would have been barred by res judicata if the Derivative Action had been fully litigated to final judgment; *(c)* have been, could have been, or could in the future be, asserted derivatively in any forum or proceeding or otherwise against any of the Plaintiff's Released Persons; or *(d)* arise out of, relate to, or concern the claims or causes of action alleged in the Derivative Action, including the defense, settlement, or resolution of such claims or causes of action, *provided, however,* that Plaintiff's Released Claims shall not include *(y)* claims to enforce the terms of the Stipulation and/or the Judgment, or *(z)* direct claims against Defendants by Current Shareholders (other than Plaintiff) in their individual capacities.

1.29    "Plaintiff's Released Persons" means Defendants, Defendants' Counsel, and each and all of their past, present, or future family members, spouses, domestic partners, parents, associates, affiliates, subsidiaries, officers, directors, stockholders, owners, members, representatives, employees, attorneys, financial or investment advisors, consultants, underwriters, investment banks or bankers, commercial bankers, insurers, reinsurers, excess insurers, co-insurers, advisors, principals, agents, heirs, executors, trustees, estates,

beneficiaries, distributees, foundations, general or limited partners or partnerships, joint ventures, personal or legal representatives, administrators, or any other person or entity acting or purporting to act for or on behalf of any Defendant, and each of their respective predecessors, successors, and assigns.

1.30    "Plaintiff's Releasing Persons" means Plaintiff, Omega, and each and every other Current Shareholder, for themselves and derivatively on behalf of Omega, and for their heirs, successors, representatives, assigns, and beneficiaries, and for any person or entity that could assert any of the Plaintiff's Released Claims on their behalf.

1.31    "Preliminary Approval Order" means the Preliminary Approval Order to be rendered by the Court, substantially in the form attached hereto as Exhibit B.

1.32    "Released Claims" means Plaintiff's Released Claims and Defendants' Released Claims.

1.33    "Released Persons" means Plaintiff's Released Persons and Defendants' Released Persons.

1.34    "Releasing Persons" means Plaintiff's Releasing Persons and Defendants' Releasing Persons.

1.35    "SEC" means the United States Securities Exchange Commission.

1.36    "Settlement" means the terms and conditions associated with the resolution of all claims and causes of action relating to this Derivative Action, as set forth in this Stipulation.

1.37    "Settlement Hearing" means the hearing or hearings at which the Court will review the adequacy, fairness, and reasonableness of the Settlement.

1.38    "Settling Parties" means Plaintiff and Defendants.

1.39    "Stipulation" means this Stipulation of Settlement, negotiated by the Settling

Parties.

1.40    "Stourbridge Action" means *Stourbridge Investments LLC v. Callen et al.*, Case No. 1:18-cv-07638 (S.D.N.Y.).

1.41    "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Shareholder Derivative Action, substantially in the form attached hereto as Exhibit D.

1.42    "Swan Action" means the following two consolidated cases: *Swan v. Pickett, et al.*, Case No. 24-C-1-000573 and *Bradley, et al. v. Callen et al.*, Case No. 24-C-19-000572 (Baltimore, Md. Cir. Ct.).

1.43    "Unknown Claims" means any Released Claim(s) that Plaintiff or Defendants do not know of or suspect to exist in his, her, or its favor as of the Effective Date.  With respect to any and all Released Claims, the Settling Parties agree that upon the Effective Date, the Settling Parties expressly waive the provisions, rights and benefits conferred by or under California Civil Code section 1542, or any other law of the United States or any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to section 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Settling Parties acknowledge that they may hereafter discover facts in addition to or different from those now known or believed to be true by them, with respect to the subject matter of the Released Claims, but it is the intention of the Settling Parties to completely, fully,

finally, and forever compromise, settle, release, discharge, and extinguish any and all Released Claims, known or unknown, suspect or unsuspected, contingent or absolute, accrued or unaccrued, apparent or unapparent, which do now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. The Settling Parties acknowledge that the foregoing waiver was separately bargained for and is a key element of this Stipulation.

**2. Terms of the Settlement**

2.1    Within sixty (60) days of the Effective Date, the Board shall adopt such resolutions and amend such bylaws, committee charters and policies or procedures as necessary to ensure adherence to the Corporate Governance Reforms for a period of no less than two (2) years following the Effective Date.

2.2    The Corporate Governance Reforms comprise practices, positions, committees, charters, and policies that will be adopted or that were adopted after December 31, 2020, the date that Plaintiff provided his settlement demand to Defendants.

2.3    Omega acknowledges and agrees that the filing, pendency, and settlement of the Derivative Action was a material factor in the Company's decision to adopt, implement, and maintain the Corporate Governance Reforms. Omega also acknowledges and agrees that the Corporate Governance Reforms confer substantial benefits on Omega and Current Shareholders.

2.4    In the event that there is a change in Applicable Law that conflicts with any Corporate Governance Reform implemented hereunder or makes compliance with any such Corporate Governance Reform impracticable, or if the continued implementation or maintenance of any Corporate Governance Reform would be inconsistent with the Board's duties under Maryland law, in each case in the good faith judgment of the Board, Omega shall

have the right to modify or repeal such Corporate Governance Reform consistent with such Applicable Law or duty, based on Board review and determination that the modification or repeal is necessary and appropriate.  In the event the Board determines to repeal or modify the Corporate Governance Reforms in any material respect in order to conform to any Applicable Law or duty, the Board shall endeavor to adopt a substitute policy or measure designed to accomplish the purpose(s) of the repealed policy or measure.  Any such material changes shall be described and explained in the next regularly scheduled periodic report on Form 10-Q or 10-K filed with the SEC.

**3.  Approval and Notice**

3.1     Promptly after execution of this Stipulation, the Settling Parties shall submit the Stipulation, together with its exhibits, to the Court and shall apply for entry of the Preliminary Approval Order, requesting: (i) preliminary approval of the Settlement set forth in this Stipulation; (ii) approval of the form and manner of providing notice of the Settlement to Current Shareholders; and (iii) a date for the Settlement Hearing.

3.2     Notice of the Settlement to Current Shareholders shall consist of the Notice, which includes the general terms of the Settlement set forth in this Stipulation and the date of the Settlement Hearing, substantially in the form attached hereto as Exhibit C, as well as the Summary Notice, substantially in the form attached hereto as Exhibit D.

3.3     Within ten (10) days after the entry of the Preliminary Approval Order, Omega shall: *(a)* post the Notice, with a copy of this Stipulation and exhibits hereto, on the investor relations page of the Company's website, which will be maintained through the date of the Settlement Hearing; *(b)* publish the Summary Notice in *Investor's Business Daily* or issue the Summary Notice in a press release with *GlobelNewswire*, including a link to the investor relations page of the Company's website; and *(c)* file the Notice, with a copy of this Stipulation

and exhibits hereto, as exhibits to an SEC Form 8-K.

3.4    Omega (or its insurers) shall be solely responsible for paying the costs and expenses related to providing Notice of the Settlement to Current Shareholders pursuant to this Stipulation or as otherwise required by the Court. The Settling Parties believe the manner of the notice procedures set forth in this Stipulation constitute adequate and reasonable notice to Current Shareholders pursuant to Applicable Law and due process. Within thirty (30) days after the entry of the Preliminary Approval Order, Defendants' Counsel shall file with the Court an appropriate declaration with respect to posting, publishing, and filing the notice of the Settlement.

3.5    Upon entry of the Preliminary Approval Order, pending the Court's determination as to final approval of the Settlement and entry of the Judgment: *(a)* Plaintiff, Plaintiff's Counsel, and all Current Shareholders will be barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Diversity Claims against any of the Plaintiff's Released Persons; and *(b)* Plaintiff and Plaintiff's Counsel (but not Current Shareholders other than Plaintiff) will be barred and enjoined from commencing, prosecuting, instigating, or in any way participating in the commencement or prosecution of any action asserting any Non-Diversity Claims against any of the Plaintiff's Released Persons.

## 4.  Attorney's Fees and Reimbursement of Expenses

4.1    In consideration of the substantial benefits conferred upon Omega and Current Shareholders as a direct result of the Corporate Governance Reforms and Plaintiff's and Plaintiff's Counsel's efforts in connection with the Derivative Action, and subject to Court approval, Omega's insurers shall pay to Plaintiff's Counsel, collectively, their attorneys' fees and costs in the amount of eight hundred and fifty thousand dollars ($850,000) (the "Fee and

17

Expense Amount"). Plaintiff and Plaintiff's Counsel agree that they will not seek attorneys' fees and expenses that exceed the maximum total amount of $850,000.00. For the avoidance of any doubt, none of Defendants or any of their affiliates or successors, shall be obligated to pay or cause to be paid any such fees and expenses in the event the Court does not actually award such fees and/or expenses.

4.2     Defendants shall cause the Fee and Expense Amount to be paid by Omega's insurers into an escrow account controlled by The Brown Law Firm, P.C. within thirty (30) calendar days of the latest of the following to occur: (1) entry of the Preliminary Approval Order, and (2) Defendants' Counsel's receipt from Plaintiff's Counsel of payment instructions and a Form W-9. The Fee and Expense Amount, to the extent awarded by the Court, shall be immediately releasable to Plaintiff's Counsel upon entry of the Judgment and an order approving the Fee and Expense Amount or such other amount as may be awarded by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof. The Fee and Expense Amount or such other amount as may be awarded by the Court shall constitute final and complete payment for Plaintiff's attorneys' fees and expenses that have been incurred or will be incurred in connection with the Derivative Action. Plaintiff's Counsel will determine amongst themselves how the Fee and Expense Amount is to be allocated, to which Defendants will take no position. Defendants shall have no responsibility for, and no liability with respect to, the allocation of the attorneys' fees awarded among Plaintiff's Counsel and/or to any other Person who may assert some claim thereto.

4.3     In the event that the Judgment is not entered or fails to become Final, if a collateral attack is successful, or if the Settlement is otherwise terminated, Plaintiff's Counsel must

refund the Fee and Expense Amount to Omega's funding insurance carrier within thirty (30) days from receiving notice from Defendants' Counsel of written payment instructions and tax information.  To the extent that the Court does not approve Plaintiff's Counsel's application for an award of attorneys' fees and costs in the full amount of the Fee and Expense Amount, or such award is reduced, Plaintiff's Counsel must refund any unapproved portion of the Fee and Expense Amount to Omega's funding insurance carrier within thirty (30) days from receiving notice from Defendants' Counsel of written payment instructions and tax information.

4.4     The procedure for and the allowance or disallowance by the Court of any award of fees and expenses is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to any award of fees and expenses, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the Finality of the Judgment approving the Stipulation and the Settlement set forth herein (including the releases contained herein).

4.5     Plaintiff's Counsel may apply for a proposed service award of up to two thousand dollars ($2,000.00) for Plaintiff in recognition of the substantial benefits he helped to create for all Current Shareholders ("Service Award").  Any Service Award approved by the Court shall be funded from the Fee and Expense Amount.  Defendants and Defendants' Counsel shall not object to any application for the Service Award.

**5.  Releases**

5.1     <u>Plaintiff's Diversity Releases</u>:  Upon the Effective Date, each of the Plaintiff's Releasing Persons shall be deemed to, and by operation of the Judgment shall: *(a)* have fully, finally, and forever released, relinquished, and discharged the Diversity Claims against the

Plaintiff's Released Persons; *(b)* have covenanted not to sue any Plaintiff's Released Person with respect to any Diversity Claims; and *(c)* be permanently barred and enjoined from instituting, commencing or prosecuting the Diversity Claims against the Plaintiff's Released Persons.

5.2    <u>Plaintiff's Non-Diversity Releases</u>:  Upon the Effective Date, Plaintiff, binding on himself and not on Omega, Current Shareholders, or any plaintiff in the Other Derivative Actions, shall be deemed to, and by operation of judgment shall: *(a)* have fully, finally, and forever released, relinquished, and discharged the Non-Diversity Claims against the Plaintiff's Released Persons; *(b)* have covenanted not to sue any Plaintiff's Released Person with respect to any Non-Diversity Claims; and *(c)* be permanently barred and enjoined from instituting, commencing or prosecuting the Non-Diversity Claims against the Plaintiff's Released Persons.

5.3    <u>Defendants' Releases</u>:  Upon the Effective Date, each of the Defendants' Releasing Persons shall be deemed to, and by operation of the Judgment shall: *(a)* have fully, finally, and forever released, relinquished and discharged each and all of Defendants' Released Persons from Defendants' Released Claims; *(b)* have covenanted not to sue Defendants' Released Persons with respect to any of Defendants' Released Claims; and *(c)* be permanently barred and enjoined from instituting, commencing or prosecuting Defendants' Released Claims against Defendants' Released Persons.

5.4    Nothing herein shall in any way impair or restrict the rights of any Settling Party to enforce the terms of the Stipulation.  In addition, nothing in this Stipulation constitutes or reflects a waiver or release of any rights or claims of Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives,

including, but not limited to, any rights or claims by the Defendants under any directors' and officers' liability insurance or other applicable insurance coverage maintained by Omega.

**6. Conditions of Settlement; Effect of Disapproval, Cancellation, or Termination**

6.1    The Effective Date of this Stipulation shall be conditioned on the occurrence of the following events:

    a.   the Settlement is preliminarily approved and the content and method of providing notice of the proposed Settlement to Current Shareholders is approved by the Court;

    b.   notice of the Settlement is disseminated to Current Shareholders;

    c.   payment of the Fee and Expense Amount into an escrow account controlled by The Brown Law Firm, P.C., in accordance with paragraphs V.4.1 and V.4.2 of this Stipulation;

    d.   the Judgment is entered by the Court, without awarding costs to any party, except as provided herein; and

    e.   the Judgment becomes Final.

6.2    If any of the conditions set forth in paragraph V.6.1 of this Stipulation are not met, then the Stipulation may be canceled and terminated at any Settling Party's option, subject to paragraph V.6.3 of this Stipulation, unless counsel for the Settling Parties mutually agree in writing to proceed with the Stipulation.  Fort the avoidance of doubt, any failure of the Court to approve the Fee and Expense Amount or the Service Award(s), in whole or in part, shall have no effect on the Settlement or entitle any Settling Party to cancel or terminate this Stipulation.

6.3    If for any reason the Effective Date of the Stipulation does not occur, or if the Stipulation is in any way canceled, terminated, or fails to become Final in accordance with its terms: (i) all Settling Parties and Released Persons shall be restored to their respective positions

in the Derivative Action as of the date of the execution of this Stipulation; (ii) all releases delivered in connection with the Stipulation shall be null and void, except as otherwise provided for in the Stipulation; (iii) any portion of the Fee and Expense Amount that has been paid to Plaintiff's Counsel shall be refunded and returned within thirty (30) days, as provided in paragraph V.4.3 of this Stipulation; and (iv) all negotiations, proceedings, documents prepared (including any memorandum of understanding or letter agreement), and statements made in connection herewith shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by a Settling Party of any act, matter, or proposition, and shall not be used in any manner for any purpose in the Derivative Action or in any other action or proceeding.  In such event, the terms and provisions of the Stipulation shall have no further force and effect with respect to the Settling Parties and shall not be used in the Derivative Action or in any other proceeding for any purpose.

**7. Bankruptcy**

7.1    In the event any proceedings by or on behalf of Omega, whether voluntary or involuntary, are initiated under any chapter of the United States Bankruptcy Code, including any act of receivership, asset seizure, or similar federal or state law action ("Bankruptcy Proceedings"), the Settling Parties agree to use their commercially reasonable best efforts to obtain all necessary orders, consents, releases, and approvals for effectuation of the Stipulation and Settlement in a timely and expeditious manner.  By way of example only, the Settling Parties agree to cooperate in making applications and motions to the bankruptcy court, including, for relief from any stay, approval of the Settlement, authority to release funds, authority to release claims and indemnify officers and directors, and authority for the Court to enter all necessary orders and judgments, and any other actions reasonably necessary to effectuate the terms of the Settlement.

7.2     In the event of any Bankruptcy Proceedings by or on behalf of Omega, the Settling Parties agree that all dates and deadlines set forth herein, in the Derivative Action, or associated with an appeal concerning the Settlement or Derivative Action, if any, may be extended for such periods of time as necessary to obtain necessary orders, consents, releases, and approvals from the bankruptcy court to carry out the terms and conditions of the Stipulation and Settlement.

## 8.  Miscellaneous Provisions

8.1     The Settling Parties: *(a)* acknowledge that it is their intent to consummate this Stipulation; and *(b)* agree to act in good faith and cooperate to take all reasonable and necessary steps to expeditiously implement the terms and conditions of this Stipulation.

8.2     In the event that any part of the Settlement is found to be unlawful, void, unconscionable, or against public policy by a court of competent jurisdiction, the remaining terms and conditions of the Settlement shall remain intact.

8.3     Any planned, proposed, or actual sale, merger, or change-in-control of Omega shall not void this Stipulation.  The Stipulation shall run to the Settling Parties' respective successors-in-interest.  In the event of a planned, proposed, or actual sale, merger, or change-in-control of Omega, the Settling Parties shall continue to seek court approval of the Settlement expeditiously.

8.4     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Derivative Action.  The Settlement comprises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim, allegation, or defense.  The Settling Parties and their respective counsel agree that at all times during the course of the litigation, each has complied with the requirements of the applicable laws and rules of the Court, including, without limitation, Rule

11 of the Federal Rules of Civil Procedure, and all other similar laws and/or rules governing professional conduct.

8.5     Each of the Individual Defendants expressly denies and continues to deny each and all of the claims and contentions in the Derivative Action and all allegations of wrongdoing or liability against himself or herself arising out of any conduct, statements, acts, or omissions alleged, or which could have been alleged, in the Derivative Action.

8.6     The existence of the provisions contained in this Stipulation shall not be deemed to prejudice in any way the respective positions of the Settling Parties with respect to the Derivative Action, shall not be deemed a presumption, a concession, or admission by any of the Settling Parties of any fault, liability, or wrongdoing as to any facts, claims, or defenses that have been or might have been alleged or asserted in the Derivative Action or with respect to any of the claims settled in the Other Derivative Actions, or any other action or proceeding, and shall not be interpreted, construed, deemed, invoked, offered, or received in evidence or otherwise used by any Person in the Derivative Action, the Other Derivative Actions, or in any other action or proceeding, except for any litigation or judicial proceeding arising out of or relating to this Stipulation or the Settlement whether civil, criminal, or administrative, for any purpose other than as provided expressly herein.

8.7     This Stipulation may be modified or amended only by a writing signed by the signatories hereto, or their respective successors-in-interest.

8.8     This Stipulation shall be deemed drafted equally by all Settling Parties.

8.9     No representations, warranties, or inducements have been made to any of the Settling Parties concerning this Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

8.10    Each Person executing this Stipulation or its exhibits on behalf of any of the Settling Parties hereby warrants that such Person has the full authority to do so.

8.11    Plaintiff and Plaintiff's Counsel each represent and warrant that *(i)* Plaintiff is a Current Shareholder and has been at all relevant times; and *(ii)* none of Plaintiff's claims or causes of action referred to in the Derivative Action, or any claims Plaintiff could have alleged, have been assigned, encumbered, or in any manner transferred in whole or in part.

8.12    The exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

8.13    This Stipulation and the exhibits attached hereto constitute the entire agreement among the Settling Parties with respect to the subject matter hereof and supersede all prior and contemporaneous oral and written agreements and discussions.

8.14    In the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit hereto, the terms of this Stipulation shall prevail.

8.15    This Stipulation may be executed in one or more counterparts, including by signature transmitted by facsimile or emailed PDF files.  Each counterpart, when so executed, shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.

8.16    The Stipulation and Settlement shall be governed by, and construed in accordance with, the laws of the State of Maryland without regard to conflict of laws principles.

8.17    The Court shall retain jurisdiction to implement and enforce the terms of the Stipulation and Judgment, and to consider any matters or disputes arising out of or relating to the Settlement.  The Settling Parties submit to the jurisdiction of the Court for purposes of

implementing and enforcing the Settlement embodied in the Stipulation and Judgment, and for matters or disputes arising out of or relating to the Settlement.

[*Signatures on Following Page*]

IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed by their duly authorized attorneys.

**WAGNER PLLC**

By: *Camille Wagner*
      Camille Wagner (Bar No. 30731)
      1629 K St. NW, Ste. 300
      Washington, DC 20006
      T: 202-630-8812
      E: law@myattorneywagner.com
*Co-Counsel for Plaintiff*

**MARK COTTON**

By: *Mark Cotton*
      Mark Cotton (Bar No. 14463)
      10665 Stanhaven Place, Suite 300
      White Plains, MD 20695
      T: 202-802-6551
      E: mark@cottonesquire.com
*Co-Counsel for Plaintiff*

**THE BROWN LAW FIRM, P.C.**

By: 
      Timothy Brown
      767 Third Avenue, Suite 2501
      New York, NY 10017
      T: 516-922-5427
      E: TBrown@thebrownlawfirm.net
*Of Counsel for Plaintiff*

**PESSIN KATZ LAW, P.A.**

By: Roberrt Campbell
      Steven A. Allen (Bar No. 00607)
      Robert S. Campbell (Bar No. 25731)
      901 Dulaney Valley Road, Suite 500
      Towson, Maryland 21204
      T: 410-769-6140
      E: sallen@pklaw.com
      E: rcampbell@pklaw.com
*Counsel for Defendants*

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: 
      Eric Rieder
      1290 Avenue of the Americas
      New York, NY 10104
      T: 212-541-2057
      E: ERieder@bclplaw.com
*Of Counsel for Defendants*